UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CATHAY CAPITAL HOLDINGS II, LP,<br><br>*Plaintiff*,<br><br>*v.*<br><br>TING ZHENG,<br><br>*Defendant*. | Civil No. 3:20cv1365 (JBA)<br><br><br>August 18, 2021 |

**RULING DENYING MOTION TO REMAND AND GRANTING MOTIONS TO COMPEL ARBITRATION AND TO STAY THE CASE PENDING ARBITRATION**

Cathay Capital Holdings II, LP, brought suit against Ting Zheng in Connecticut Superior Court for misappropriation of trade secrets, misappropriation of non-trade property, civil theft, breach of fiduciary duty, unfair competition, and unjust enrichment. (Compl., Ex. A to Notice of Removal [Doc. # 1-1].) Defendant removed the action to the U.S. District Court for the District of Connecticut, arguing that several arbitration agreements governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. §§ 201 to 208 ("New York Convention") conferred subject matter jurisdiction on federal courts. (Def.'s Am. Notice of Removal [Doc. # 47] at 3-4.) Plaintiff filed a motion to remand, claiming that the notice of removal fails to establish that the agreements are related to the litigation. (Pl.'s Mot. to Remand [Doc. # 26] at 1-2.) Defendant requests that the Court compel arbitration and stay the litigation pending its outcome. (Def.'s Mot. to Compel Arbitration and Stay Case ("Mot. to Compel Arb.") [Doc. # 29] at 1-3.)

On August 5, 2021, the Court granted Defendant leave to amend its notice of remand to include sufficient detail to evaluate whether the litigation relates to the arbitration agreements. Defendant satisfactorily filed its amended notice of removal on August 12, 2021. (Def.'s Am. Notice of Removal [Doc. # 47].)

I. **Background**

Plaintiff is "a private equity fund launched in February 2007 dedicated to direct investment in China" and describes itself as "one of the most successful and experienced providers of growth capital to private companies in the Chinese economy." (Compl. ¶¶ 6, 10.) On August 3, 2012, Cathay entered into a Share Subscription Agreement ("2012 Share Subscription Agreement") with Great Trade, a holding company which owns several Chinese operating companies, including WOT Mechanical Equipment Co., Ltd. ("WOT Mechanical") and Fuzhou Minyue Mechanical & Electrical Co., Ltd. ("Minyue"). (*Id.* ¶ 11.) Through this agreement, Plaintiff purchased twenty percent of Great Trade's share capital. (Mot. to Compel Arb. at 8.) Defendant has acted as both a director and CEO of Great Trade and has, at all relevant times, been the controlling shareholder of the holding company. (Compl. ¶¶ 12-13.) The 2012 Share Subscription Agreement provides the "parties agree to negotiate in good faith to resolve any dispute between them regarding this agreement" but that, "[i]n the event the parties are unable to settle a dispute [themselves] . . ., such dispute shall be referred to and finally settled by arbitration at the Hong Kong International Arbitration Centre ("HKIAC") in accordance with the UNCITRAL Arbitration Rules ("UNCITRAL Rules") in effect." (Def.'s Am. Notice of Removal [Doc. # 47] at 3; 2012 Share Subscription Agreement [Doc. # 32] at 34.)

Two weeks later, on August 17, 2012, Plaintiff, Defendant, and the other shareholders entered into a shareholder agreement, which defined their rights and obligations. (Mot. to Compel at 9; Shareholders' Agreement [Doc. # 32] at 209.) The Shareholder Agreement "contains provisions prohibiting the company and its subsidiaries from carrying out significant transactions, selling or disposing of major assets, acquiring or entering into joint ventures or partnerships with other companies, or making material changes in the business of any of Great Trade's subsidiaries without the prior written approval of Cathay." (Mot. to Compel Arb. at 9 (citing Shareholders' Agreement at 220-223).) Significantly, the agreement

2

also prohibits "Key Holders" from "engag[ing] in a Competitive Business Activity" without prior written consent. (Shareholders' Agreement at 224.) Like the 2012 Share Subscription Agreement, the Shareholders' Agreement requires that any dispute "regarding this Agreement . . . shall be referred to and finally settled by arbitration at the [HKIAC] in accordance with the [UNCITRAL Rules] in effect." (*Id.* at 230.)

Three years later, in November 2015, Plaintiff invested additional funds in Great Trade pursuant to the 2015 Share Subscription Agreement, giving it a forty percent stake in the company. (Compl. ¶ 14.) This agreement provides, *inter alia*, for certain preferred payments to Plaintiff. (2015 Share Subscription Agreement [Doc. # 32] at 274-75.) As with the other two agreements, the agreement contains a dispute resolution provision requiring disputes that cannot be settled between the parties to be referred to and settled by arbitration. (*Id.* at 281.)

In April 2020, Plaintiff discovered that Defendant had secretly created a new company called Shanghai Yuede Electromechanical Equipment Co., Ltd. ("Yuede") in December 2018, which he operated in direct competition with WOT Mechanical. (Compl. ¶¶ 29-30.) This action benefitted the other shareholders while harming Plaintiff by making the shares of WOT Mechanical worthless. (*Id.* ¶ 53.) All of Plaintiff's claims relate to this alleged misconduct.

## II. Discussion

### A. Motion to Remand

Although the removal statute is typically interpreted narrowly, *see Goel v. Ramachandran*, 823 F. Supp. 2d 206, 209 (S.D.N.Y. 2011), Section 205 of the New York Convention created "one of the broadest removal provisions in the statute books," *Acosta v. Master Maintenance and Const. Inc.*, 452 F.3d 373, 377 (5th Cir. 2006). This furthers the "goal of the Convention[, which] is to promote the enforcement of arbitral agreements in contracts involving international commerce so as to facilitate international business transactions and

to unify the standards by which agreements to arbitrate are observed." *Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 92 (2d Cir. 1999) (internal citation omitted). It also "promotes the strong federal policy favoring arbitration of disputes, particularly in the international context." *Id.* Given this broad removal provision, "the general rule of construing statutes strictly against removal cannot apply to [New York Convention] cases." *Acosta*, 452 F.3d at 377.

"The Convention . . . set[s] forth four basic requirements for enforcement of arbitration agreements under the Convention: (1) there must be a written agreement; (2) it must provide for arbitration in the territory of a signatory of the convention; (3) the subject matter must be commercial; and (4) it cannot be entirely domestic in scope." *Id.* Further, the Convention provides:

> Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention the defendant . . . may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending. The procedure for removal of causes otherwise provided by law shall apply, except that the ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal.

9 U.S.C. § 205.

"The party asserting federal jurisdiction generally bears the burden of proving that the case is properly in federal court." *Goel*, 823 F. Supp. 2d at 211. "Where, as here, jurisdiction is asserted by a defendant in a removal petition, it follows that the defendant has the burden of establishing that removal is proper. *United Food & Commercial Workers Union, Local 919 v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994).

As the Court discussed in its ruling granting Defendant leave to amend its notice of removal, the New York Convention requires only that a complaint and petition for removal demonstrate that subject matter of an action pending in state court "relates to" an arbitration subject to the Convention in order to justify removal. 9 U.S.C. § 205. While the Second Circuit

has not yet interpreted the scope of the phrase "relates to," the Fifth, Eighth, Ninth, and Eleventh Circuits all adopt the broad view that an arbitration "relates to the plaintiff's suit" "whenever an arbitration agreement falling under the Convention could *conceivably* affect the outcome of the plaintiff's case." *Beiser v. Weyler*, 284 F.3d 665, 669 (5th Cir. 2002); *accord Outokumpu Stainless USA, LLC v. Coverteam SAS*, 902 F.3d 1316, 1323 (11th Cir. 2018), *rev'd and remanded on other grounds*, 140 S. Ct. 1637 (2020); *Reid v. Doe Run Res. Corp.*, 701 F.3d 840, 844 (8th Cir. 2012); *Infuturia Glb. Ltd. v. Sequus Pharm., Inc.*, 631 F.3d 1133, 1137-38 (9th Cir. 2011).

"Absent the rare frivolous petition for removal, as long as the defendant claims in the petition that an arbitration clause provides a defense, the district court will have jurisdiction to decide the merits of that claim." *Beiser*, 284 F.3d at 671-72. Such a liberal removal standard both comports with the plain meaning of the phrase "relates to" and avoids making a merits inquiry into the arbitrability of the case at the jurisdictional stage. *Id.*

Here, the dispute falls under the New York Convention and "relates to" at least one of the arbitration agreements. The Shareholders' Agreement sets forth a noncompetition provision stating that Key Shareholders, which include Defendant, may not "engage in a Competitive Business Activity" without the consent of the Investor. (Shareholders' Agreement at 209, 224, 234.) A Competitive Business Activity is defined as:

> (i) engaging in, or managing or directing Persons engaged in any business which directly competes with the Business in the PRC; (ii) acquiring or having an ownership interest in any business engaged in the activities described under sub-section (i) of this Section 7.2; or (iii) participating in the financing, operation, management or control of any firm partnership entity or business described in subsection (i) of this sentence.

(*Id.* at 224.)

And the Shareholders Agreement further requires any dispute that cannot be settled between the parties to be "referred and finally settled by arbitration at the Hong Kong International Arbitration Centre ("HKIAC") in accordance with the UNCITRAL Arbitration

5

Rule ("UNCITRAL Rules") in effect." (*Id.* at 295.) It also states that "[t]he arbitration tribunal shall apply the Arbitration Rules of the KIAC in effect at the time of the arbitration." (*Id.*)

Thus, there is (1) a written agreement, (2) that provides for arbitration in Hong Kong, a signatory of the convention, (3) on a commercial matter, (4) that is not entirely domestic in scope. Moreover, Plaintiff alleges in this case that Defendant "use[d] assets of WOT Mechanical to form Yuede, a competing and substantially identical business" which harmed Plaintiff by misleading it into "accept[ing] shares in two essentially worthless shell companies." (Compl. ¶ 54.) This dispute plainly relates to the arbitration provision in the Shareholders' Agreement, which may prohibit the type of competition in which Defendant is alleged to have engaged.

Plaintiff's Motion for Remand is therefore denied, and the Court will retain jurisdiction over the case.

### B. Motion to Compel Arbitration and Stay the Case

As a threshold matter, the Court must determine whether the parties intended for the Court or the arbitrator to decide arbitrability. Defendant maintains that "the parties here clearly and unmistakably agreed to arbitrate disputes about the scope of their arbitration clauses" since those clauses expressly incorporated the UNCITRAL rules, (Mem. in Supp. Of Def.'s Mot. to Compel Arbitration and to Stay Case [Doc. # 29-1] at 18), which provide that "[t]he arbitral tribunal shall have the power to rule on its own jurisdiction," UNCITRAL Rules, Art. 23(1) (2014). It cites the Second Circuit case *Schneider v. Kingdom of Thailand*, which held that the UNCITRAL rules provide "clear and unmistakable evidence that the parties intended questions of arbitrability to be decided by the arbitral panel in the first instance." 688 F.3d 68, 72-73 (2d Cir. 2012). Plaintiff maintains that this case is inapposite because "it involves assumptions about intent in simple, unambiguous contractual frameworks that are distinguishable from the commercial relationship here." (Pl.'s Mem. in Opp. to Def.'s Mot. to

Compel Arbitration and to Stay Case ("Pl.'s Mem. Opp. Mot. to Compel Arb") [Doc. #34] at 20.)

*Schneider* concerned a treaty between Thailand and Germany regarding reciprocal protection of investments. 688 F.3d at 70. Walter Bau initiated an arbitration against Thailand claiming that it had unlawfully interfered with investments made by its predecessor in interest. *Id.* Thailand objected to the arbitral tribunal's jurisdiction on the grounds that the investments at issue were not covered by the arbitration agreement since Mr. Bau never obtained the requisite Certificate of Admission from Thailand's Ministry of Foreign Affairs. *Id.* The arbitration tribunal disagreed and held that it had jurisdiction over the matter because the investments were covered by the treaty. *Id.* Although the arbitration panel itself never answered the question of who should decide the gateway question of arbitrability, the Second Circuit found that the arbitration panel had such authority because "where 'parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator.'" *Id.* at 72 (quoting *Contec Corp. v. Remote Solution, Co., Ltd*, 398 F.3d 205 (2d Cir. 2005)). The Second Circuit noted that the agreement at issue incorporated the UNCITRAL Arbitration rules as rules of procedure, which provide that the arbitral panel has the authority to decide issues of arbitrability. *Id.*

Plaintiff maintains that that the Shareholders' Agreement does not indicate an intent to delegate questions of arbitrability because the existence of multiple agreements, only some of which contain arbitration provisions, does not reflect an intent for an arbitrator to decide arbitrability and because the arbitration clause is too ambiguous to provide "clear and unmistakable evidence that the parties intended for the arbitrability issue to be resolved under the UNCITRAL rules alone." (Pl.'s Mem. Opp. Mot. to Compel Arb. at 20, 24.)

In support of its position that the existence of multiple agreements, only some of which provide for arbitration, indicates the absence of clear intent to delegate arbitrability,

7

Plaintiff relies on *NASDAQ OMX Group, Inc. v. UBS Securities, LLC*, 770 F.3d 1010 (2d Cir. 2014). In *NASDAQ*, the Second Circuit concluded that the question of arbitrability was one for the courts because the arbitration agreement included a qualifier that arguably excluded the dispute at issue from arbitration. *Id.* at 1031. The arbitration agreements here contain no such qualifier and pertain to all disputes relating to the contracts. This is precisely the language that the Second Circuit has held evidences clear and unambiguous intent to arbitrate arbitrability. *See id.* (citing *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1199 (2d Cir. 1996)). Plaintiff offers, and the Court has found, no authority that the existence of multiple contracts between parties, of which only some contain arbitration agreements, precludes a finding of a clear and unambiguous intent to delegate arbitrability to an arbitrator.

In light of the binding nature of *Scheider*, the Court finds that the Shareholders' Agreement to arbitrate all disputes "regarding this Agreement" using the UNCITRAL rules evinces the parties' intent to arbitrate arbitrability. The HKIAC rules, which the arbitration agreement also implements, do not make that intent ambiguous, because Plaintiff has not shown that the rules are in conflict at all, let alone that they conflict on who decides issues of arbitrability. To the contrary, HKIAC, like UNCITRAL, gives arbitrators the authority to rule on questions of their own jurisdiction. HKIAC Administered Arbitration Rules, Article 19.1 (2018), *available at* https://www.hkiac.org/arbitration/rules-practice-notes-hkiac-administered-2018 ("The arbitral tribunal may rule on its own jurisdiction under these Rules, including any objections with respect to the existence, validity or scope of the arbitration agreement."). The incorporation of both sets of rules only further reinforces the parties' intent to delegate the jurisdictional question of arbitrability to the arbitrator.

Defendant's motion to compel arbitration is thus granted. Because it is undisputed that the case should be stayed pending arbitration, the Court grants Defendant's motion to stay and will administratively close the case until the ordered arbitration is completed.

8

Either party may move to reinstate the case to the Court's active docket by motion filed within thirty days of the completion date of arbitration.

### III. Conclusion

For the reasons set forth above, Plaintiff's motion to remand is DENIED and Defendant's motion to compel arbitration and stay the case is GRANTED.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 18th day of August, 2021